IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL B. ZIDELL, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | Civil Action No. 3:24-CV-2340-D |
| § | |
| EAST WEST BANK, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

This is a securities fraud action brought by plaintiff Michael Zidell ("Zidell") and related Zidell trusts (collectively "Zidell," unless the context indicates otherwise) arising from an Internet scam. Defendants Cathay Bank ("Cathay"), East West Bank ("EWB"), and Citibank, N.A. ("Citibank") move to dismiss for lack of personal jurisdiction under Fed R. Civ. P. 12(b)(2), and for failure to state a claim under Rules 12(b)(6) and 9(b). For the reasons that follow, the court grants the motions to dismiss for lack of personal jurisdiction and dismisses this action without prejudice to being re-filed in a court that has personal jurisdiction.

I

The court need not extensively summarize the background facts and procedural history to decide these motions. Zidell is a Texas resident whom Caroline Parker ("Parker") contacted on Facebook, leading to the development of a relationship. Parker told Zidell how she had earned millions of dollars investing in non-fungible tokens ("NFTs") on a website

called OpenrarityPro.com, and encouraged him to do the same. Zidell did decide to invest in NFTs, and, over the next few months, he sent 40 wire transfers totaling over $20 million to different bank accounts. The wire transfers were facilitated by defendants Cathay, EWB, and Citibank. When Zidell sought to withdraw his funds, he was forced to pay various fees. One day, the website vanished before he could receive any of his money.

Defendants EWB and Cathay are organized under California law, maintain their principal places of Business in California, and operate branches in Texas. Defendant Citibank maintains its main headquarters in South Dakota and its main office in New York.

Zidell alleges that defendants aided and abetted securities fraud under the Texas Securities Act. He asserts that defendants aided Parker and her co-conspirators by opening bank accounts and providing services, including wire transfers, that were used to perpetuate wire fraud. EWB and Cathay jointly move to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rules 12(b)(6) and 9(b). Citibank separately moves to dismiss for lack of personal jurisdiction under Rule 12(b)(6) and for failure to state a claim under Rules 12(b)(6) and 9(b). The court is deciding the motions on the briefs, without an evidentiary hearing or oral argument.

## II

### A

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985) (citing *Thompson*

*v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985)).

The determination of whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Cathay, EWB, and Citibank would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999) (footnotes omitted).

A defendant's contacts with the forum state may support either general or specific jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out

of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

On the other hand, "general jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (citations omitted). "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (first brackets added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "The paradigm forums in which a corporate defendant is at home[] . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation and internal quotation marks omitted).

But the "exercise of general jurisdiction is not limited to these forums; in an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* (citation and internal quotation marks omitted). An exemplary case is *Perkins v. Benguet Consol. Mining Co.*, in which "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio[,]" whereupon "Ohio became the center of the corporation's wartime activities." *Id.* (citing *Perkins v. Benguet Consol. Mining Co.*, 342

U.S. 437, 447-48 (1952) (citations and internal quotation marks omitted)).

In considering whether defendants' activities are sufficient as to render them "essentially at home" in the forum state, "'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts.'" *BNSF Ry. Co.*, 581 U.S. at 414 (quoting *Daimler*, 571 U.S. at 139, n.20). "Rather, the inquiry 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *Id.* (quoting *Daimler*, 571 U.S. at 139, n.20).

B

"The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (footnote omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw,* 167 F.3d at 211 (footnotes omitted).

Zidell concedes that specific personal jurisdiction does not exist in this case. He contends that general jurisdiction is satisfied, however, because both EWB and Cathay have Texas branches, which establish continuous contacts and makes it reasonable for them to expect to be haled into court in Texas. Similarly, Zidell maintains that Citibank's production of relevant documents from its San Antonio office is sufficient to establish general jurisdiction. The court disagrees.

Both EWB and Cathay maintain their headquarters and principal places of business in California. They are therefore considered "at home" and subject to general personal jurisdiction in California. *See BNSF Ry. Co.*, 581 U.S. at 413. Similarly, Citibank is headquartered in South Dakota, and its main office is in New York. Thus Citibank is "at home" and subject to general personal jurisdiction in New York and South Dakota. *See id.* The test for general jurisdiction is where the defendant is considered "at home," but Zidell contends that this is an oversimplification of the relevant caselaw. It is true that the law does allow for additional findings of general personal jurisdiction in "exceptional cases." But Zidell's amended complaint and response are devoid of any attempt to establish an "exceptional case." Therefore, Zidell has failed to plead facts sufficient to show that the defendant banks' contacts with Texas are sufficient to render them "sufficiently at home" and to qualify as an "exceptional case." *See id.*

To illustrate why the defendant banks' contacts are insufficient to qualify as an "exceptional case," it is useful to compare their contacts with Texas to the defendant railroads' contacts with Montana in *BNSF Railway, Co. See id.* BNSF's contacts in *BNSF Railway Co.* did not constitute an "exceptional case" that gave rise to personal jurisdiction despite having 2,000 miles of railroad in Montana and 2,000 employees in Montana. *Id.* at 414. The Court analyzed BNSF's business as a whole, not just in Montana, and found that BNSF's activities in Montana amounted to 6% of its total track mileage, 5% of its total workforce, and 10% of its total revenue. *Id.* at 406. Similarly, Cathay, EWB, and Citibank have insufficient contacts with Texas to be rendered "essentially at home" and qualify as an

"exceptional case." Cathay Bank maintains fewer than 4% of its branch locations in Texas, 2.5% of its business demand deposit accounts are in Texas, and 21.5% of its consolidated revenue from 2023 is from Texas. Similarly, East West asserts that 12.24% of it branch locations are in Texas, 1.6% of deposits in business demand deposit accounts are in Texas, and 8.02% of the 2023 gross revenue was generated from Texas operations. Although the record does not provide data on the extent of Citibank's contacts with Texas, there is no showing of sufficient contacts, considering that Citibank only contends that it only has a single "subpoena compliance unit" located in Texas.

* * *

Accordingly, for the reasons explained, the court grants defendants' Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction and dismisses Zidell's actions without prejudice to his re-filing them in a court that has personal jurisdiction. The court does not address defendants' motions to dismiss for failure to state a claim under Rules 12(b)(6) and 9(b).

**SO ORDERED**.

March 26, 2025.

                                                SIDNEY A. FITZWATER
                                                SENIOR JUDGE